UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK CHRISTENSEN,

        Petitioner,                Case Number 21-10850

v.                                         Honorable David M. Lawson

CHANDLER CHEEKS,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR
A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

      Petitioner Mark Christensen is a state prisoner who presently is confined by the Michigan Department of Correction's (MDOC) Thumb Correctional Facility in Lapeer, Michigan. He was sentenced to several concurrent prison terms ranging from 30 months to 15 years, after he was convicted in 2019 on state charges of distributing controlled substances and absconding from supervision. On April 16, 2021, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Christensen asserts in his petition that he faces imminent and serious risks to his health due to concerns that he may be reinfected with the COVID-19 virus while incarcerated. He previously was diagnosed with the virus while in prison, but he evidently recovered without serious complications. He asserts that other personal health factors such as his age (he was 47 years old when the petition was filed), his obese condition (BMI 33.2), and the fact that he was a chronic smoker for 30 years all supply grounds for concern that he could suffer serious complications if he contracts the coronavirus disease again in the future.

I.

      Christensen asserts in his petition that his immediate release is warranted because the MDOC has refused to enforce the Governor of Michigan's executive orders regarding the

mitigation of pandemic risks at state facilities, and the MDOC has violated its own directives aimed at preventing the spread of the disease, which require, among other things, social distancing of inmates from each other. The petitioner contends that the MDOC has failed to allow adequate social distancing and has refused to house him in his own prison cell to allow adequate separation from other prisoners. The petitioner filed several supplemental statements in support of his petition in which he contends that the State's opposition misrepresents the status of the pandemic at the Thumb Correctional Facility, because the MDOC halted periodic testing of prisoners for COVID-19 several weeks before the State's response to the petition was filed. According to the petitioner, this change in routine allowed the State falsely to represent that there were no active coronavirus infections at the prison. The petitioner asserts, however, that he later was told by a prison guard that one prisoner tested positive for the virus when the prisoner and a visitor were subjected to mandatory "instant testing" for the virus, which occurred just before a scheduled visit. The petitioner contends that if periodic testing of all prisoners were resumed then many more active infections likely would be revealed by the results. After his petition was filed, the petitioner also filed a request for an emergency restraining order reasserting substantially the same arguments and seeking an order for his immediate release from prison.

II.

As an initial matter, the State's response to the petition addresses the claims as if they were brought via 28 U.S.C. § 2254, not 28 U.S.C. § 2241. The Court, however, will address the petition under the rubric of section 2241, since that is the authority invoked by the petition and he is challenging the manner in which his sentence is being executed, not the underlying judgment of conviction. For the reasons that follow, the Court finds that the petition must be denied.

A.

The petitioner contends that prison officials are violating the Eighth Amendment's prohibition against cruel and unusual punishment by failing to enforce the Governor of Michigan's executive orders and the MDOC's own directives aimed at preventing the spread of COVID-19 in the state prison system. He alleges that prison officials have refused to place him in his own prison cell, in violation of the social distancing rules put in place by the executive orders. He asks the Court to order his immediate release from prison due to the resulting risk that he faces from infection (or reinfection) by the virus.

In certain circumstances, where a prisoner's habeas petition seeks release from prison based on claims that no set of conditions of confinement would be constitutionally sufficient, the claim properly may be construed as challenging the fact or extent of confinement, which raises issues cognizable under 28 U.S.C. § 2241. *See Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020) (citing *Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011)). On the other hand, conditions of confinement claims that seek relief in the form of improvement of prison conditions or a transfer to another facility are not cognizable under § 2241. *Ibid.* (citing *Luedtke v. Berkebile*, 704 F.3d 465, 466 (6th Cir. 2013)).

In this case, section 2241 does not furnish a basis for redress of the petitioner's claims. He does not assert that "the *only* remedy that will vindicate [his Eighth Amendment] right . . . is release from custody. *See Awshana v. Adducci*, 453 F. Supp. 3d 1045, 1047 (E.D. Mich. 2020). Instead, he alleges that the prison has violated state-mandated social distancing rules by placing too many inmates in one cell, and by failing to house him in his own prison cell. The petitioner alleges that his risk of contract COVID-19 could be ameliorated if prison officials followed the social distancing rules and did not place inmates in overcrowded cells. However, he does not

allege that there are no conditions of confinement that would be sufficient to prevent irreparable constitutional injury at the Thumb Correctional Facility. As stated, his claims are not cognizable in a section 2241 petition. *Wilson*, 961 F.3d at 838.

Claims that challenge the conditions of a state inmate's confinement ordinarily must be asserted in a civil rights complaint via 42 U.S.C.§ 1983. *See Lutz v. Hemingway*, 476 F. Supp. 2d 715, 718 (E.D. Mich. 2007). Once it has been determined that the gravamen of a state prisoner's *pro se* habeas petition comprises claims that must be advanced in a section 1983 suit, the proper course is for the Court to dismiss the petition without prejudice, so that the petitioner may assert his civil rights claims properly in a § 1983 action. *See Martin v. Overton,* 391 F.3d 710, 714 (6th Cir. 2004) (holding that the district court should have dismissed the habeas petitioner's § 2241 petition without prejudice to allow the petitioner to raise his civil rights claims properly in a section 1983 action rather than recharacterizing the petition as a civil rights complaint). However, in this instance, generously construing the petition to pose at least some claims that could be cognizable under section 2241, the Court also will address the merits of the constitutional allegations.

B.

Assuming that some of the claims raised in the petition could be advanced in a section 2241 petition, or that the initiating pleading generously could be construed as raising civil rights claims via 42 U.S.C. § 1983, the petitioner has failed to present facts suggesting that the circumstances of his incarceration violate any federal law or constitutional provision.

Whether the pleadings in this matter are viewed through the lens of a habeas corpus petition under 28 U.S.C. § 2241 or a civil rights complaint under 42 U.S.C. § 1983, Christensen must establish in the first instance a violation of his rights emanating from the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner

unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States"); 42 U.S.C. § 1983 (providing a cause of action against state actors for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws"). The petitioner principally alleges that his incarceration violates his rights under the Eight Amendment because his continued confinement during the pandemic, after he previously was exposed to the virus, foreseeably exposes him to reinfection, which may be life threatening. He further alleges that, because the MDOC has failed or refused fully to implement some safety protocols that are mandated by the State's directives, he still faces an intolerable risk of future severe illness due to his underlying health conditions.

Christensen has understandable health concerns. And it is well established that "[w]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general wellbeing." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation omitted). "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).

The applicable test has two elements. *Id.* at 834. First, the prisoner must demonstrate that the deprivation alleged is "objectively, 'sufficiently serious.'" *Ibid.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Ibid.* Second, the prisoner must demonstrate that a prison official had a "sufficiently culpable state of mind." *Ibid.* (citing *Seiter*, 501 U.S. at 297). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Ibid.* This element can be proven by circumstantial evidence from which the fact finder can conclude that the state

actor perceived the risk and then disregarded the risk, *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001), or "from the very fact that the risk was obvious," *Terrance*, 286 F.3d at 843.

### i. Objective Component

It has been widely acknowledged by this and other federal courts, and by now, "[n]o one can deny that the health risks caused by the [coronavirus] pandemic are grave." *Toma v. Adducci*, No. 20-11071, 2020 WL 2832255, at *4 (E.D. Mich. May 31, 2020). Many courts, including the Sixth Circuit, have observed that

> [t]he COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune [system] compromise. If contracted, COVID-19 can cause severe complications or death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing.

*Wilson*, 961 F.3d at 833; *see id.* at 845 (noting that "COVID-19 is not only highly infectious but also devastating to those unfortunate enough to contract it," and that "[t]he likelihood of more severe effects increases dramatically for those who are of an advanced age or who have any number of preexisting conditions, including cardio-vascular disease, respiratory disease, asthma, diabetes, and diseases that compromise the immune system") (Cole, Chief Judge, concurring in part and dissenting in part).

However, despite the acknowledged risks posed by COVID-19, Christensen has failed to show that he is incarcerated under conditions posing a substantial risk of serious harm. He purports to fall within the category of individuals who would be at an increased risk of complications if they contract COVID-19 due to his age, obesity, and history of smoking. Several of those factors are recognized by public health authorities as posing an increased risk of serious consequences

from infection by the coronavirus. *See* CDC, COVID-19: Persons with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (Updated May 13, 2021).

It also is undisputed that the petitioner's facility has over the past year experienced a significant outbreak of the coronavirus. Statistics published by the MDOC reveal that more than 1,000 inmates have been tested for the virus, 532 cases were confirmed, 493 prisoners who contracted the disease have recovered, and nine of those who fell ill have died. MDOC Response and Information on Coronavirus (COVID-19), https://medium.com/@MichiganDOC/mdoc-takes-steps-to-prevent-spread-of-coronavirus-covid-19-250f43144337 (Updated Aug. 16, 2021). However, to address the health risks posed by the pandemic, the MDOC has taken many steps to prevent the spread of COVID-19 in its prisons. Among other things, the agency has imposed — and continues to impose — many restrictions on prison operations to address the risks posed by the pandemic. For example, currently effective MDOC directives impose the following safety measures, among others, at all prison facilities:

- requiring all prison staff who have the ability to work remotely to do so;
- requiring all inmates and staff to wear face masks at all times while in prison facilities;
- screening all persons entering prison facilities for symptoms of COVID-19 infection and temperature, and requiring "rapid antigen" testing of both visitors and prisoners scheduled for visits;
- limiting large gatherings of prisoners, including limiting size and frequency of prison classroom programming and restricting the number of inmates congregating in prison dining facilities;
- limiting prison transfers and temporary releases or out-of-facility movements of prisoners;

- imposing screening criteria on prisoners transferred or temporarily released from MDOC custody, such as personal health screenings, and requiring negative COVID-19 antibody tests before release or transfer;

- requiring antibody testing of new prisoners upon intake at MDOC reception centers; and

- establishing quarantine areas for the isolation of inmates who test positive for COVID-19.

Michigan Department of Corrections Director's Office Memorandum 2021-26R6 (Mar. 26, 2021), https://www.michigan.gov/documents/corrections/DOM_2021-26R6_COVID_Final_3-26-21____720613_7.pdf. Those actions, and the ongoing safety and health directives in force throughout the MDOC's operations, demonstrate that the MDOC has responded reasonably to the risk posed by COVID-19. *See Wilson*, 961 F.3d at 841 (concluding that similar measures taken in a federal prison showed a reasonable response to the risk posed by COVID-19). The extent of these measures affirms the concern that COVID-19 potentially poses a risk of serious harm to inmates. However, the MDOC's mitigation efforts also confirm that it has responded appropriately to the danger of infections, which undercuts the notion that Christensen "is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

Christensen points to several underlying comorbidities that may increase his susceptibility to developing severe complications from a COVID-19 infection. However, at 47 years old, his age does not present a risk recognized by the CDC. Moreover, even if some of his personal health characteristics suggest an elevation of risk, there is good reason to believe that Christensen has some prospective immunity against the virus, for which he previously tested positive. *See, e.g.*, *Decline in SARS-CoV-2 Antibodies After Mild Infection Among Frontline Health Care Personnel in a Multistate Hospital Network*, Ctrs. for Disease Control & Prevention (November 27, 2020), https://bit.ly/3lnH79m ("Most persons develop virus-specific antibodies to SARS-CoV-2 after

infection; however, the timeline of antibody decline over time is uncertain."); *Lasting Immunity Found After Recovery from COVID-19*, Nat. Inst. of Health (Jan 26, 2021), https://bit.ly/2U3UvpX ("The immune systems of more than 95% of people who recovered from COVID-19 had durable memories of the virus up to eight months after infection.").

Finally, recent reports indicate that the probability of infection at the Thumb Correctional Facility, although once relatively high, now is very low, with no active cases affiliated with the facility. The petitioner asserts that the absence of current reported infections merely is a fortuitous consequence of the MDOC's decision to halt pervasive, periodic testing of all inmates. However, he also affirmatively represents that one case was detected during a routine (apparently mandatory) "instant test" of a prisoner that occurred before a prison visit. His contention that "many more" cases would be discovered if more comprehensive testing were resumed is mere speculation that is not supported by any specific facts or any information in the record that has been so far presented to the Court. Moreover, the risk of a renewed outbreak is mitigated by the showing that the MDOC has implemented many measures to halt the spread of the virus, including screening and testing staff, visitors, and prisoners that are released or transported, heightened cleaning protocols, disbursement of masks, limitations on prison transfers, and the implementation of isolation areas. MDOC also has made vaccines available to all staff since December 2020, and, since March 8, 2021, to all prisoners age 50 and older with an underlying health condition. *See* MDOC Coronavirus Information and Response, *supra.*; *see also Neal-El v. Whitmer*, No. 20-11539, 2020 WL 4346958, at *3 (E.D. Mich. July 29, 2020) ("While [Petitioner] asserts that he lives in a communal environment and is unable to practice social distancing in prison and that he is concerned for his well-being because he is older (51) and has high blood pressure, he fails to identify specific issues regarding the prison's response to the pandemic, or lack thereof, that rise

to the level of a substantive due process or other constitutional violation. Moreover, while Petitioner states that he tested positive for the virus in May 2020, he does not allege facts showing that the prison failed to treat him, that his medical needs were (or are) not being met, or that alternative incarceration or release from custody is necessary at this time. Conclusory allegations, without evidentiary support, are insufficient to warrant federal habeas relief.").

ii. Subjective Component

Christensen also has not put forth facts suggesting that the respondent has a culpable state of mind and is ignoring his high-risk status. The measures taken by the MDOC demonstrate the agency's and the respondent's active concern for the health and welfare of Michigan prisoners. The petitioner therefore has not shown that the respondent knowingly has disregarded an imminent risk to his health, which precludes success on a claim that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). To paraphrase the conclusion in *Wilson*, the MDOC "has not turned a blind eye or deaf ear to a known problem that would indicate . . . a lack of concern for [the petitioner's] welfare. [The MDOC] has in fact put in place and updated its protocols to address the novel risks from COVID-19. The [MDOC's] steps to prevent and mitigate COVID-19 spread at [the Thumb Correctional Facility] are . . . reasonable responses to this serious risk." *Wilson*, 961 F.3d at 844; *see also Jones v. Burt*, No. 21-41, 2021 WL 2024705, at *10 (W.D. Mich. May 21, 2021) ("Clearly, Defendant Washington and the MDOC have taken extensive steps to address the risk of COVID-19 to inmates statewide. As noted by the Sixth Circuit in *Wilson*, such actions demonstrate the opposite of a disregard of a serious health risk." (citing *Wilson*, 961 F.3d at 841.)).

C.

For all of the same reasons discussed above, the petitioner also has not established that he is entitled to early injunctive relief, principally because he cannot demonstrate any likelihood of success on any of his constitutional claims. It is evident from the record presented to the Court that the MDOC promptly responded to concerns about COVID-19 and continues to monitor the conditions in its prisons and update its protocols. MDOC officials have not disregarded an excessive risk to inmate health or safety, and its actions have not been so ineffective as to constitute deliberate indifference to the serious risk of harm presented by COVID-19. Therefore, Christensen's constitutional rights have not been violated, and he would not have a substantial likelihood of prevailing on any deliberate indifference claim if the case proceeded. This conclusion is dispositive, because the Sixth Circuit's "'cases warn that a court must not issue a preliminary injunction where the movant presents no likelihood of merits success.'" *Wilson*, 961 F.3d at 844 (quoting *Daunt v. Benson*, 956 F.3d 396, 421-22 (6th Cir. 2020)).

III.

The petitioner has failed to allege facts suggesting that he is in custody in violation of any federal law or constitutional provision, and he has not advanced facts tending to suggest that the respondent unreasonably has disregarded any imminent risk to his health. The petitioner has not shown that he has any likelihood of success on any of his constitutional claims, and, therefore, his request for early injunctive relief also will be denied.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the petitioner's request for a temporary restraining order (ECF

No. 8) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   August 18, 2021